NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOY NELSON, et al, | : | |
| | : | Civil Action No. 10-742 (SRC) |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| MAVERICK FUNDING CORP, et al, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motions to dismiss the First Amended Complaint ("FAC" or "Complaint") [docket entry no. 3] filed by Defendant NattyMac, LLC ("NattyMac") [docket entry no. 29], Defendant Comprehensive Title Services, Inc. ("Comprehensive") [docket entry no. 30], Defendant Norman Zolkos [docket entry no. 31], and Defendants Maverick Funding Corp. ("Maverick"), Ralph Sebastiano Vitiello, Michael Frank Petruccelli, and Jeffrey Penington [docket entry no. 32]. Plaintiffs Joy Nelson, Jennifer Nelson and Martin McElroy have filed a motion to strike documents from Maverick's motion to dismiss [docket entry no. 38] and a motion for leave to amend their complaint [docket entry no. 50]. The parties have fully briefed each motion. The Court has considered the papers submitted by the parties, and pursuant to Federal Rule of Civil Procedure 78, rules on the motion without oral argument. For the reasons discussed below, the Court grants the motions to dismiss and

dismisses the Complaint in its entirety.[1]

### I. BACKGROUND

Plaintiffs filed this mortgage fraud action in this Court on February 12, 2010. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Based on the allegations in the Complaint, and assuming their truth for purposes of this motion only, the Court summarizes the factual background as follows:

Plaintiff Joy Nelson refinanced her home in August 2008. Plaintiffs Jennifer Nelson and Martin McElroy closed on their home refinancing on February 25, 2009. (FAC ¶ 4.13). Defendant Maverick acted as the mortgage banker in both transactions. The mortgage broker was Homeland Funding Solutions.[2] Defendant NattyMac was the warehouse lender and Defendant Comprehensive conducted the title reviews.

With regard to Jennifer Nelson and Martin McElroy's closing, Homeland received a loan origination fee of $2,793.00, and a loan discount fee of $2,504.93. (FAC ¶ 4.18). Homeland also received a Yield Spread Premium (YSP) from Maverick.. (FAC ¶ 4.19). Comprehensive received a fee of $250. (FAC ¶ 4.18). Plaintiffs also contend that both the "Amount Financed" and the "annual percentage rate" were understated on the TILA Disclosure Statement. (FAC ¶ 6.74).

---

[1] In light of the dismissal of the entire Complaint, the Court does not address the portion of the Maverick's motion seeking to strike certain allegations in the Complaint.

[2] Homeland Funding Solutions is no longer operational.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. *Id.* at 1965; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

In deciding a motion to dismiss, courts may consider "matters incorporated by reference

3

or integral to the claim." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Accordingly, this Court may properly consider the loan file documents of Jennifer and Joy Nelson attached to the Declaration of Jeffrey Pennington [docket entry no. 32-2].[3]

**B.     RICO**

Plaintiffs open their Complaint by alleging that Defendants conduct violated the civil RICO statute. The Court begins by quoting the governing statutory language of 18 U.S.C. § 1962(c). It provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). A properly pled violation of 18 U.S.C. § 1962(c) involves satisfaction of a number of elements. "The plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)).

The Third Circuit has held that "'there must not only be a nexus between the [defendant] and the conduct [of] the affairs of an enterprise' but also a nexus between the conduct of those affairs and the pattern of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 371 (quoting *Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d

---

[3]With regard to Plaintiffs' motion to strike documents from Maverick's motion to dismiss, the motion is denied. The Court notes that it does not rely on any of the documents specifically contested in Plaintiffs' reply [docket entry no. 49]. As to the documents the Court does rely on, Plaintiffs have failed to demonstrate why the Court should not apply the normal rule. *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 ("Plaintiff cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

Cir. 1993) (alterations in original). To satisfy the related elements of a "pattern" of "racketeering activity," a plaintiff must allege that a defendant committed at least two acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5). In this case, those acts of racketeering are alleged to be mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. See, generally, 18 U.S.C. § 1961(1) (defining "racketeering activity").

Mail and wire fraud must be pled with particularity, in compliance with Federal Rule of Civil Procedure 9(b). *Lum*, 361 F.3d 217, 223-24 (3d Cir. 2004). Rule 9(b) requires that a plaintiff plead "the date, place or time of the fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Defendants argue that Plaintiffs' allegations fall far short of this standard. The Court agrees. Nowhere in the FAC do Plaintiffs describe even one particular example of mail or wire fraud. Obviously their failure to single out any incidents means that they did not plead "the date, place or time of the fraud or otherwise inject precision or some measure of substantiation into [the] fraud allegation." *Id.*

    **C.**    **Conspiracy to Violate RICO**

A Section 1962(d) claim must be dismissed if the complaint does not adequately allege "an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *Salina v. United States*, 522 U.S. 52, 65 (1997). As indicated in the preceding section, the Court has concluded that Plaintiffs have failed to adequately plead a claim under Section 1962(c), accordingly, the RICO conspiracy claim must also be dismissed.

### D. Real Estate Settlement Practices Act

#### 1. Statute of Limitations

Damage claims under the Real Estate Settlement Practices Act ("RESPA") are generally subject to a one year statute of limitation. 12 U.S.C. § 2614. Joy Nelson's closing occurred on August 26, 2008. She therefore had until August 26, 2009 to pursue this claim. The instant complaint was not filed, however, until February 12, 2010. Though Plaintiffs argue that Joy Nelson's claim is subject to equitable tolling, they fail to adequately show as much.

"Equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (citations omitted). While Plaintiffs contend the statute of "limitations should be equitably tolled due to Defendants' fraudulent concealment of facts necessary for Plaintiffs to know that they had a claim," (Pls.' Br. at 23) they utterly fail to state facts in support of the alleged fraudulent concealment. Such bare invocations of the legal standard without factual support will not suffice. *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Accordingly, Joy Nelson's claim is time barred.

#### 2. Kickbacks and Unearned Fees

Jennifer Nelson and Martin McElroy contend that the yield spread premium and title review fee collected in relation to their February 2009 closing violated Section 8(b) of the Real Estate Settlement Procedures Act. Section 8(b) of the RESPA provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

The Third Circuit has addressed this provision in *Santiago v. GMAC Mortgage Group, Inc.* 417 F.3d 384 (3d Cir. 2005). The *Santiago* court examined the difference between "overcharges"[4] and "markups."[5] It found that Section 8(b) did not provide a cause of action for overcharges. *Id*. at 387. On the other hand, the court did find that Section 8(b) allowed a cause of action for unearned markups. *Id*. at 389.

        a.        Yield Spread Premium

Plaintiffs claim that the payment of the YSP violated the RESPA for two reasons: (1) the charge was not disclosed on the HUD-1 Settlement Statements; and (2) it constituted an unearned fee. The first basis can be summarily addressed as there is no private right of action for such a disclosure claim under RESPA. *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 557-58 (9th Cir. 2010) (no private right of action for non-disclosure of costs in HUD-1 settlement statement); *Collins v. FMHA-USDA*, 105 F.3d 1366, 1367-68 (11th Cir. 1997) (no private right of action for non-disclosure in a "good faith estimate"); *Bassett v. Ruggles*, No. CV-F-09-528, 2010 WL 1525554, at *10 (E.D. Cal. Apr. 15, 2010) (YSP not required disclosure under the RESPA).

---

[4] "[A]n overcharge occurs when the settlement provider charges the consumer a fee, of which only one portion is a fee for the reasonable value of 'services rendered.' The other portion of the fee, the amount in excess of the reasonable value, is essentially a fee for 'no services rendered' that is added to the fee for 'services rendered.'" *Santiago*, at 387.

[5] Markups occur where a settlement service provider marks up the cost of a service provided by a third party vendor and retains the marked up portion without having provided any service.

As for whether or not the YSP constituted an "unearned fee" in violation of the RESPA, Plaintiffs simply fail to state a claim. The Third Circuit has not explicitly dealt with the legality of YSPs. Courts in this district have found that YSPs "are not illegal if they are 'earned' in accordance with §8(c)." *Warburton v. Foxtons, Inc.*, Civ. No. 04-2474(FLW), 2005 WL 1398512, at *5 (D.N.J. June 13, 2005). In the FAC, Plaintiffs allege that "HOMELAND received YSPs without providing any goods or services of the kind typically associated with mortgage transactions." (FAC ¶ 6.25). This allegation is flatly contradicted by Complaint itself. Plaintiffs clearly indicate that Homeland took the initial loan application from Jennifer Nelson. (FAC ¶ 4.12). Even without looking to disputed documents, the loan file demonstrates additional work done by Homeland, including the preparation of the Good Faith Estimate, ordering and paying for an appraisal of the property and ordering a credit report on the borrower. (Pennington Decl., Ex. B at B6-B7, B9, B11). Moreover, even were these statements not contradicted, they constitute the type of conclusory statements "devoid of factual enhancement" that the Supreme Court found insufficient to state a plausible claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

        b.    Title Review Fee

Plaintiffs allege that the title review fees paid by Jennifer Nelson to Comprehensive were unnecessary and duplicative because title services were already provided by National Title and Escrow Company, Inc., and therefore constitute unearned fees in violation of the RESPA. (FAC ¶ 4.21). However, Jennifer Nelson's loan documents explicitly contradict that. These documents unambiguously identify non-duplicative services performed by Martineau, Davis Title and Escrow ("MDTE"), Comprehensive Title's alleged predecessor in interest. Specifically, MDTE

writes to National Title indicating that National's title commitment had been received, but certain items remained outstanding, including "tax and assessments search." (Pennington Decl., Ex. B at B34).

### c. Non-Disclosure of Business Affiliation

Section 8(a) of the RESPA prohibits certain business referrals, while Section 8(b) circumscribes permissible fee splitting. Section 8(c) provides a carve out for acts that do not run afoul of the RESPA. In relevant part Section 8(c) states: "Nothing in this section shall be construed as prohibiting (4) affiliated business arrangements so long as (A) a disclosure is made of the existence of such an arrangement to the person being referred..." 12 U.S.C. § 2607(c). "Affiliated business relationship" is statutorily defined as:

> an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider

12 U.S.C. § 2602(7).

Plaintiffs Complaint is fatally deficient with regard to this claim. At no point in their 43 pages do they allege that they were referred to Maverick by Homeland, or vice-versa, or that their choice was influenced in any way. The plain language of the statute indicates that disclosure obligations are only triggered where a referral has been made. Since the Complaint is utterly void of any reference to such a referral, this claim is dismissed.

### d. Martin McElroy

Defendants have challenged Martin McElroy's standing to sue under the RESPA. The

9

Court will not address this issue as there are no surviving RESPA claims.

### E. Truth in Lending Act

Plaintiffs claim that Defendants violated the Truth in Lending Act ("TILA") by "excluding charges from the finance charge that should have been included in the TILA Disclosure Statement." (FAC ¶ 6.72). As with her RESPA claim, Joy Nelson's TILA claim is similarly barred by a one year statute of limitations. *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 903 (3d Cir. 1990); 15 U.S.C. § 1640(e).

As to Jennifer Nelson's TILA claim, she never explains which charges were allegedly excluded from the finance charge. Jennifer Nelson goes on to state that the finance charge and the annual percentage rate were each understated. (FAC ¶ 6.74). The Court notes, yet again, that such conclusory statements do not suffice to state a "claim for relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. While Jennifer Nelson mentions various charges, she fails to identify which particular omission violates TILA. As such, the Court dismisses both TILA claims.

### F. State Law Claims

Because there are no surviving federal claims, the Court declines to exercise jurisdiction over the remaining state law claims. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

### III. CONCLUSION

For the foregoing reasons, this Court will dismiss the Complaint it its entirety pursuant to Rule 12(b)(6). An appropriate form of order will be filed together with this Opinion.

  <u>s/Stanley R. Chesler</u><br>
  STANLEY R. CHESLER<br>
  United States District Judge

DATED: March 23, 2011